[695 NYS2d 584]

In the Matter of LANCE H. FALOW (Admitted as LANCE HOW-
ARD FALOW), an Attorney, Respondent. GRIEVANCE COM-
MITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, September 27, 1999

## APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Faith Lorenzo* of counsel), for petitioner.

*Sweeney, Cohn, Stahl & Vaccaro,* White Plains (*Julius W. Cohn* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition, dated April 30, 1992, containing nine charges of professional misconduct. Special Referee Martin sustained Charges One through Eight. Charge Nine was withdrawn at the hearing. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent cross-moves to disaffirm the Special Referee's report to the extent that it sustained Charges One through Seven, to confirm the report to the extent that it sustained Charge Eight, and to direct a censure as the appropriate sanction.

Charge Two alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (5) (22 NYCRR 1200.3 [a] [4], [5]).

In or about 1986, the respondent and his father, William B. Falow, began to represent Lillie Mae McIntyre regarding the estate of Charles Swan, Jr., her deceased brother. On or about July 17, 1986, William B. Falow submitted or caused to be submitted to the Westchester County Surrogate's Court a petition to have Ms. McIntyre appointed administratrix of the estate. That application also sought authorization to sell property located at 224 Union Avenue in the City of Mount Vernon to Winston N. Jordan for $16,000. The request for authorization and the contract of sale submitted to the Surrogate's Court fail to reveal that Mr. Jordan was acting as a nominee for William B. Falow in the purchase of that property.

At that time, the respondent filed or caused to be filed a deed of conveyance from Ms. McIntyre, as administratrix, to Mr. Jordan, his nominee. The Surrogate's Court did not issue Let-

ters of Administration to Ms. McIntyre until August 19, 1986. The Letters restrained the administratrix from making any distribution until further order of the court. Notwithstanding the restrictions in the Letters of Administration and the order of the Surrogate's Court, the respondent sent Ms. McIntyre a $9,500 check payable to her personally. The check was issued by William B. Falow.

Charge Three alleged that the respondent engaged in an impermissible conflict of interest and/or accepted employment where the exercise of his professional judgment on behalf of a client would be or reasonably may have been affected by his own financial, business, property, or personal interests in violation of Code of Professional Responsibility DR 5-101 (A) (22 NYCRR 1200.20 [a]).

In or about 1986, the respondent and his father, William B. Falow, undertook the representation of the estate of Charles Swan, Jr. Through the use of nominee Winston N. Jordan, William B. Falow contracted to purchase the property located at 224 Union Avenue from the estate for $16,000. No appraisal was done on the property regarding the sale of the property. The deed was filed on or about August 7, 1986.

On or about November 3, 1986, Robert C. Johnson entered into a contract to purchase the property from Winston N. Jordan for $125,000. On or about April 6, 1987, the property was sold to Vincent and Jennifer Campbell for $135,000.

Charge Six alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct prejudicial to the administration of justice with regard to the Surrogate's Court, Westchester County, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (5) (22 NYCRR 1200.3 [a] [4], [5]).

William B. Falow submitted or caused to be submitted to the Westchester County Surrogate's Court the application by James Murray, as administrator of the subject estate, for removal of the restrictions in the Letters of Administration. This application sought permission to sell the entire parcel known as 457 South 1st Avenue in the City of Mount Vernon to Gary Durham for $25,000. The affidavit of Mr. Murray, prepared and notarized by the respondent, failed to reveal that Mr. Durham was a nominee for William B. Falow and Howard M. Thaler. While the Murray affidavit revealed that Thaler represented Durham, it did not disclose that Thaler shared an office with and was associated with William B. Falow, the respondent's employer.

Charge Seven alleged that the respondent engaged in an impermissible conflict of interest and/or accepted employment where the exercise of his professional judgment on behalf of a client would be, or reasonably may have been, affected by his own financial, business, property, or personal interest in violation of Code of Professional Responsibility DR 5-101 (A) (22 NYCRR 1200.20 [a]).

In or about May 1986, William B. Falow and Thaler, through the use of nominee Gary Durham, purchased 457 South 1st Avenue from the estate for $25,000. On or about December 18, 1986, the vacant lot portion of the subject property was transferred from Mr. Durham to James and Karen Allen in consideration of $44,000. On that same date, the portion of the property with the house on it was transferred from Mr. Durham to the Sutton family. The consideration listed in the deed was $185,000.

Charge Eight alleged that the respondent engaged in conduct involving fraud, deceit, and misrepresentation and/or conduct which adversely reflects on his fitness to practice law by providing a false and misleading answer to a complaint of professional misconduct, by submitting false and misleading documents to the Grievance Committee, and by providing false and misleading testimony, under oath, to the legitimate inquiries of the Grievance Committee, and of obstructing an investigation of the Grievance Committee in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about November 3, 1987, the Grievance Committee forwarded to the respondent a copy of a *sua sponte* complaint regarding real estate transactions involving 457 South 1st Avenue and requested his written answer within 10 days. The respondent submitted an answer, dated November 12, 1987, in which he stated that James Murray was aware of his association with Thaler and that they had a mutual client for the purchase. He further stated that the price was agreed upon in view of all circumstances and with disclosure to all concerned parties. Along with his answer, the respondent submitted a statement from James Murray indicating that it was at all times disclosed to Mr. Murray, his brother, and his brother's attorney that the purchaser of the property was a client of William B. Falow and Thaler. This was misleading in light of the respondent's subsequent responses to the Grievance Committee's inquiries.

By letter dated January 27, 1989, the Grievance Committee requested that the respondent submit any and all bank state-

ments, records of deposits, ledger books, cancelled checks, and confirmations of wire transfers for the period December 1, 1984, "through the present," for any escrow accounts or accounts from which client expenses were paid, including disbursements to contractors performing work for his clients. In reply, the respondent indicated that he did not hold, disburse, or receive any checks. The Grievance Committee thereafter secured a copy of a check representing the down payment on the contract between Durham and the Allens to purchase the vacant lot. The check was payable to the respondent.

At his appearance before the Grievance Committee on October 5, 1989, the respondent testified that he assisted his father with the estate at issue; that Mr. Durham was a client of William B. Falow and Thaler; and that the administrator got his money by checks from the purchaser. The respondent denied lending any money to Durham regarding this transaction or sharing any profits. He also denied any knowledge of whether his father or Thaler lent any money to Durham regarding this transaction or shared in any profits.

When questioned about what caused the property to increase in value from the $25,000 sale price in or about April 1986 to its resale price of $185,000 in December 1986, the respondent testified that he was sure that a lot of work had to be done. The respondent denied any involvement in the work done on the property.

At his next appearance before the Grievance Committee on April 16, 1990, the respondent testified that at the time of his appearance in October 1989, he was aware that Mr. Durham was acting in the purchase on behalf of his father and Thaler. The respondent also testified that he signed some checks after the closing. Those checks were drawn on a joint account which he maintained with his father. According to the respondent, the money in that account was his father's.

Based on the evidence adduced, including the respondent's admissions, Special Referee Martin properly sustained Charges Two, Three, Six, Seven, and Eight. The Grievance Committee's motion to confirm the Special Referee's report is granted to the extent that Charges Two, Three, Six, Seven, and Eight are sustained and is otherwise denied. The respondent's cross motion to confirm in part and disaffirm in part is granted to the extent that Charge Eight is sustained and Charges One, Four, and Five are not sustained and is otherwise denied.

In determining an appropriate measure of discipline to impose, the respondent asks this Court to consider that his

motivation was not pecuniary gain and that the protection of the public is not an issue here. Rather, the respondent contends, he was acting under the emotional compulsion of a son protecting his father. The respondent presented six character witnesses who testified as to his reputation for honesty and integrity.

According to the respondent, he was cast in a subordinate role as a newly-admitted attorney working in his father's law office. He submits that his subordinate role, together with the incumbent pressures of a situation created entirely by his father and Howard M. Thaler, his unblemished record for the past 12 years, and his cooperation and candor with the Grievance Committee should be considered by the Court in limiting the sanction imposed upon him to a censure.

Notwithstanding the mitigation advanced by the respondent, he is guilty of acts of professional misconduct involving conflicts of interest, conduct prejudicial to the administration of justice, and providing a false and misleading answer and testimony in an effort to obstruct an investigation of a complaint of professional misconduct. Special Referee Martin viewed the respondent's predicament in the following terms: "His biggest mistake was in taking employment from his father, William Falow, who lead [sic] him into this unethical and improper conduct. There was no indication that Respondent participated financially in the schemes of his father or benefitted financially. However, this does not excuse his failure to remove himself from the situation or to truthfully answer the Grievance Committee. Loyalty to his father is admirable, but can not justify his actions".

Under the totality of circumstances, the respondent is suspended from the practice of law for five years.

MANGANO, P. J., BRACKEN, S. MILLER, O'BRIEN and RITTER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted to the extent that Charges Two, Three, Six, Seven, and Eight are sustained and is otherwise denied; and it is further,

Ordered that the respondent's cross motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that Charge Eight is sustained and Charges One, Four, and Five are not sustained, and the respondent's cross motion is otherwise denied; and it is further,

Ordered that the respondent, Lance H. Falow, is suspended from the practice of law for a period of five years, commencing October 27, 1999, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years upon furnishing satisfactory proof that (a) during the said period he refrained from practicing or attempting to practice law, (b) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Lance H. Falow, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.